IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Mary Ann Harris, | ) | |
| | ) | C/A No. 6:12-2601-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | OPINION & ORDER |
| | ) | |
| | ) | |
| Aetna Life Insurance | ) | |
| Company, Avery Dennison | ) | |
| Corporation, and The Avery | ) | |
| Dennison Life Insurance | ) | |
| Benefits Plan, | ) | |
| | ) | |
| Defendants. | ) | |

_____

This matter is before the court for review of Defendant Aetna Life Insurance Company's ("Aetna's") decision to deny Plaintiff Mary Ann Harris' (Plaintiff's") claim for accidental death benefits under an insurance policy which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA").  The parties have filed a joint stipulation and memoranda in support of judgment pursuant to the court's Specialized Case Management Order for ERISA benefits cases.  The parties agree that the court may dispose of this matter consistent with the joint stipulation and memoranda.  After a thorough review, the court affirms the denial of benefits.

**The Life Insurance Plan**

During the time period relevant to this action, Aetna issued two group insurance policies, one in 2005 and another in 2008.[1]  The language in the 2005 and 2008 plans are identical in regard to the life insurance benefits at issue in this action.  Accordingly, the court will refer to the policies collectively as the Plan. The Plan provides:

_____

[1] Decedent stopped working in 2005, and the 2008 plan was in effect when Decedent died in February 2009.

>Termination of Coverage
>
>Coverage under this Plan terminates on the first to occur of:
>
>>• When employment ceases
>
>>. . .
>
>Your Employer will notify Aetna of the date your employment ceases for the purposes of termination of coverage under this Plan. This date will either be the date you cease active work or the day before the next premium due date following the date you cease active work. Your Employer will use the same rules for all employees. If you are not at work on this date due to one of the following, employment may be deemed to continue up to the limits shown below.
>
>If you are not at work due to disease or injury, your employment may be continued until stopped by your Employer, but not beyond 12 months from the start of the absence.
>
>. . .
>
>In figuring when employment will stop for the purposes of termination of coverage, Aetna will rely upon your employer to notify Aetna. . . . Your employment may be deemed to continue beyond any limits shown above if Aetna and your Employer so agree in writing.
>
>If you cease active work, ask your Employer if any coverage can be continued.

(A.R. 7030049, 7040042; ECF No. 33-1 49, 115).

>The Plan provides as follows regarding the conversion of life insurance coverage:
>
>If any of your Life Insurance ceases because your employment terminates or you are no longer in a class eligible for insurance, or because of age, pension or retirement, the amount of insurance which ceases (or a less amount if desired) may be converted to an individual insurance policy.
>
>. . .
>
>General Information Concerning the Conversion Privilege

2

> In order to convert, written application must be made for an individual policy and the first premium must be paid on it within 31 days after cessation of insurance for any of the above reasons.

(A.R. 703050-51, 704043-44; ECF No. 33-1 at 50-51, 116-17).

The Plan also includes an Accelerated Death Benefit ("ADB") provision which provides:

> If, while covered under this Plan for Life Insurance:
>
> • you or your spouse become terminally ill
>
>     . . .
>
> You may request that Aetna pay an Accelerated Death Benefit (herein called ADB). Upon Aetna's approval of any such request, Aetna will pay to you the amount of ADB; subject to all of the following terms.
>
>     A person is terminally ill if the person:
>
> • suffers from an incurable, progressive, and medically recognized disease or condition; and
>
> • to a reasonable medical probability and based on a generally accepted prognostic protocol, would not survive more than the ADB Months beyond the date of the request for an ADB        . . .
>
> Aetna may refuse your request for an ADB if:
>
> • prior to Aetna's receipt of approval of the request:
>
>     . . .
>
> The entire amount of Life Insurance of the person for whom the request is made ceases under the group contract for any reason; or . . .

(A.R.  7030037-38; ECF No. 33-1 at 37-38).

The Plan also provides that life insurance coverage terminates when the employee ceases to be employed. (A.R. 7030049, 704002; ECF No. 33-1 at 49).  The Plan specifically states that if the

employee ceases active work due to a disease or injury, employment is deemed to continue until stopped "but not beyond 12 months from the start of the absence." *Id.* The Summary Plan Description ("SPD") provides that life insurance coverage ends thirty days after employment terminates or the employee ceases to be eligible for benefits, whichever occurs first. (A.R. 7010545; ECF No. 32-1 at 36).

### Facts and Procedural Background

Prior to a worker's compensation injury, Plaintiff's husband, Gary Harris ("Decedent"), was employed with Defendant Avery Dennison Corporation ("Avery Dennison"), and, through his employment, he was provided life insurance benefits under a group life insurance plan. Avery Dennison was the Plan Sponsor Administrator and Aetna was the Plan insurer and claim administrator. (A.R. 7030070, 7040064; Aetna Answer ¶ 7). In 2005, Decedent was injured at work and was unable to return to work. His last day of work was September 30, 2005. (A.R. 7010046; ECF No. 29-1 at 46). Six months after he began receiving worker's compensation benefits, Avery Dennison placed Decedent on long term disability status, effective April 1, 2006. (A.R. 7010515; ECF No. 32-1 at 6). Decedent, however, never filed a claim for long term disability benefits. Id.

In June 2006, Avery Dennison sent Decedent a memorandum regarding his benefits while on disability, including health, welfare, and other benefits. (A.R. 7010352-53; ECF No. 30-1 at 90-91). He was informed that his medical and life insurance benefits would end on April 1, 2008, or 24 months after the start of his disability. Further, in regard to the life insurance, he was told at the end of the 24-month period, he could chose the portability or conversion option and he could obtain further information regarding these options by calling Avery Dennison Benefits Connection. *Id*.

Decedent signed settlement documents on his worker's compensation claim on August 29, 2007, and on September 10, 2007, the South Carolina Workers Compensation Commission approved

Decedent's settlement for total and permanent disability benefits. (A.R. 7010477-480; ECF No. 31-1 at 96-99). Avery Dennison terminated Decedent effective August 30, 2007.

On November 28, 2007, Avery Dennison sent Decedent a "2008 Benefits Enrollment Confirmation" indicating that the Decedent had $50,000 of "Basic Life Insurance Coverage with the effective date of January 1, 2008, at no cost to him." (A.R. 7010475; ECF No. 31-1 at 94). Avery Dennison paid the premiums for Decedent's life insurance through March 31, 2008.

In March 2008, Decedent was diagnosed with lung cancer, and he died on February 3, 2009. (A.R. 7010046; ECF No. 29-1 at 46). In June 2011, Plaintiff contacted Aetna regarding life insurance benefits.[2] She was told to file a claim and exhaust her administrative remedies. On November 15, 2012, Plaintiff filed a claim for life insurance benefits. (A.R. 7010046-48; ECF No. 29-1 at 46-48). On March 26, 2012, Aetna denied Plaintiff's claim for benefits because coverage was not in force on the date of Decedent's death. (A.R. 7010367-70; ECF No. 30-1 at 205-08). On July 31, 2012, Plaintiff appealed the denial of her claim. (A.R. 7010446-55; ECF No. 31-1 at 65-74). On August 13, 2012, Aetna upheld its denial decision. (A.R. 7010678-80; ECF No. 32-1 at 169-71).

In her Complaint, Plaintiff seeks to recover life insurance benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); injunctive relief and/or "other appropriate equitable relief" for the alleged improper termination of Decedent's life insurance coverage pursuant to 29 U.S.C. § 1132(a)(3); and attorney's fees and costs pursuant to 29 U.S.C. §1132(g)(1). (Compl. ¶¶ 35-59).

## Standard of Review

A court reviews a denial of benefits under 29 U.S.C. § 1132(a)(1)(B) "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

---

[2]Plaintiff delivered a copy of Decedent's death certificate to Avery Dennison sometime before February 23, 2009. However, she did not file a claim for life insurance benefits until November 15, 2011.

5

determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where "an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629–30 (4th Cir. 2010). Here, the Plan and the SPD vest discretionary authority to make benefit determinations in the Claims Administrator, Aetna. (SR 7030020, 7040026, 7010548). Accordingly, the parties have stipulated (Joint Stip. ¶ 3), and the court agrees, that this court should apply an abuse of discretion standard in reviewing Aetna's decision to deny Plaintiff's claim.

Under the abuse-of-discretion standard, the court we will not disturb a plan administrator's decision if the decision is reasonable, even if the court would have come to a contrary conclusion independently. *Metropolitan Life Ins. Co. v. Glenn*, 544 U.S. 105 (2008). An administrator's decision is reasonable if it was the result of a "deliberate, principled reasoning process" and is supported by substantial evidence. *See also Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322–23 (4th Cir. 2008).

> In assessing reasonableness, the Court is guided by eight nonexclusive factors:
>
> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000). "All eight Booth factors need not be," and may not be, "in play" in a given case. *Helton v. AT & T, Inc.*, 709 F.3d 343, 357 (4th Cir. 2013). In general, a reviewing court should not find an abuse

of discretion where the plan administrator's decision is reasonable, "even if the court itself would have reached a different conclusion." *Booth*, 201 F.3d at 340. A plan administrator's decision is reasonable as long as the denial of benefits results from "a deliberate, principled reasoning process" and "is supported by substantial evidence." *Williams*, 609 F.3d at 630. Substantial evidence, which "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance," is evidence that "a reasoning mind would accept as sufficient to support a particular conclusion." *Whitley v. Hartford Life & Accident Ins. Co.*, 262 F. App'x 546, 551 (4th Cir. 2008) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)) (internal quotation marks omitted).

## Discussion[3]

Plaintiff contends that the Defendants are fiduciaries of the Plan and they abused their fiduciary duties by failing to inform Decedent about the termination of his life insurance coverage and conversion rights under the Plan and misrepresented to him that his life insurance coverage was still in force on January 1, 2008.

Aetna contends that Decedent's life insurance coverage ended on October 1, 2006, twelve months after Decedent ceased to be an active employee Avery Dennison. Further, Aetna contends that Avery Dennison's payment of premiums through March 31, 2008, did not create coverage under the Plan and, even if it did, when Decedent died on February 2, 2009, there was no coverage. Moreover, Aetna contends that even if coverage is construed as being in effect until March 31, 2008,

---

[3] Avery Dennison contends that Plaintiff cannot simultaneously pursue claims under §§ 502(a)(1)(B) and 502(a)(3). Section 502(a)(3) creates a catchall which "acts[s] as a safety net, offering appropriate relief for injuries caused by violations that [§ 1132] does not elsewhere remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). See also *Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 107 (4th Cir. 2006)(holding when §1132(a)(1)(B) affords the plaintiff adequate relief, a cause of action under §1132(a)(3) is not appropriate). Here, both causes of action Plaintiff raises in her Complaint are based upon allegations that Decedent was wrongfully denied life insurance benefits. Accordingly, Plaintiff's claim for equitable relief under § 502(a)(3) is improper. *See England v. Marriott Int'l, Inc.*, 764 F.Supp.2d 761, 779 (D.Md. 2011)(holding "where a plaintiff can obtain complete relief under Section 502(a)(1)(B), for example, where he seeks only the payment of benefits under the terms of his ERISA plan, he cannot simultaneously bring a claim under Section 502(a)(3).").

Plaintiff is not entitled to accelerated death benefits ("ADB") because Decedent never filed a claim while coverage was in effect. Finally, Aetna contends it had no duty to provide notice to Decedent about his right to ADB or to convert the policy to an individual policy.

Plaintiff contends that the Avery Dennison breached its fiduciary duties by mailing Decedent the June 5, 2006 Memo which misrepresented his life insurance coverage while he was out on disability and the November 27, 2007 confirmation of benefits stating that Decedent had group life coverage in 2008 at no cost.[4] Specifically, Plaintiff argues that the Memo failed to provide Decedent with the start date of his disability, and therefore, failed to provide the proper notice as to when he had to exercise his conversion option. However, plan administrators are not required to provide notice of a participant's right of conversion unless the plan requires such notice. *See Canada Life Assurance Company v. Estate of Harvey Lebowitz, et al.*, 185 F.3d 231, 235-36 (4th Cir. 1999) ("Although it is unclear whether ERISA requires written notice of the right of conversion, since the plain language of Canada Life's Policy documents requires such written notice, Canada Life was required to give Lebowitz written notice.").

Here, the Plan did not require any notification of conversion rights. While Plaintiff points to a provision in the Plan which she contends required notice,[5] that provision applied to coverage which

---

[4] The court notes that, in her reply memorandum, Plaintiff never refers to any alleged improper conduct on the part of Aetna. (ECF No. 36). Plaintiff contends only Avery Dennison violated its fiduciary duties. Additionally, because there is nothing in the Plan which would confer discretionary authority on Aetna in regard to notice, the court finds Aetna did not breach any fiduciary duty. *See Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992). *See also Campo v. Oxford Health Plans, Inc.*, 2007 WL 1827220 (D.N.J. 2007) (finding insurer did not breach fiduciary duty where the duty to provide notice was the duty of the employer, not the insurer).

[5] The Policyholder must:

Notify all eligible employees of their right to continue coverage *under* COBRA and any applicable state law; and

provide notification to each employee within 15 days after termination of coverage, of their conversion right, including:

8

continues under COBRA, which does not encompass life insurance. *See Estate of Spinner v. Anthem Health Plans of VA*, 589 F.Supp.2d 738 (W.D.Va. 2008) (holding COBRA's post-termination notification provisions did not apply to ERISA life insurance plans). Moreover, even assuming that the November 2007 notice led Decedent to believe that he had life insurance coverage for 2008, Decedent did not die until February 3, 2009. And there is no evidence that Decedent tried to convert his insurance or apply for ADB while he was still insured. Based upon the foregoing, it is the opinion of the court that Aetna did not abuse its discretion in denying Plaintiff's claim for life insurance benefits.

### Conclusion

For the foregoing reasons, the Defendants' Motions for Judgment are granted and the denial of benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Greenville, South Carolina
November 5, 2013

---

a description of plans available;
premium rates;
and application forms.

(A.R. 7040012; ECF No. 33-1 at 85)(emphasis added).